IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

ROBERT PINTER,

     PLAINTIFF

                                    09 Civ 7841 (CM)(THK)

     vs                           COMPLAINT [JURY TRIAL]

THE CITY OF NEW YORK, a municipal
entity, NEW YORK  CITY UNDERCOVER
POLICE OFFICER # 31107, NEW YORK CITY
POLICE OFFICERS "JOHN DOES", individually
and in their official capacities, NEW
YORK CITY POLICE COMMISSIONER RAYMOND
KELLY, individually and in his official
capacity, NEW YORK CITY MAYOR MICHAEL
BLOOMBERG, individually and in his official
capacity, ASSISTANT CHIEF RAYMOND DIAZ,
Commanding Officer of Patrol Borough
Manhattan South, individually and in his
official capacity, CAPTAIN "JOE" BRAILLE,
Commander of the Vice Squad of Patrol Borough
Manhattan South, individually and in his
official capacity, CHIEF ANTHONY IZZO,
Commander of the Organized Crime Bureau of the
New York  City Police Department, individually
and in his official capacity, CHIEF JOSEPH
ESPOSITO, individually and in his official
capacity, BRIAN CONROY, individually and in
his official capacity as Deputy Chief of
the New York City Police Department's Vice
Enforcement Division, and SHARI C. HYMAN,
individually and in her official capacity
as Director of the New York City Mayor's
Office of Special Enforcement,

     DEFENDANTS

_____

I.  INTRODUCTION

    1.  The event which gives rise to this litigation
occurred on October 10, 2008 and concluded on June 22,
2009.

2.   On October 10, 2008 the Plaintiff was unjustly and falsely arrested and maliciously and falsely charged and prosecuted with a criminal offense and otherwise subjected to an extended and unjustified custodial detention and all association therewith including being subjected to malicious abuse of criminal process, discrimination and harassment based on the Plaintiff's sexual orientation or perceived sexual orientation, excessive and unreasonable and unnecessary imprisonment, and excessive and unnecessary and unreasonable terms and conditions of his custodial detention including excessive and unreasonable and unnecessary handcuffing. The charge, which was preferred against the Plaintiff, was dismissed on June 22, 2009.

3.   This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

4.   The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

II. JURISDICTION

5.   Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

6.   The Plaintiff requests that the Court invoke pendent claim and pendent party jurisdiction.  The State law claims derive from the same occurrence and transaction which gives rise to the federal law claims and they have a common nucleus of operative fact with the federally based claims.

7.   The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary

damages, whatever other relief is needed to provide full
and complete justice including, if appropriate, declaratory
and injunctive relief.

    8.   This is an action in which the Plaintiff seeks
relief for the violation of his rights as guaranteed under
the laws and Constitution of the United States and, as
well, as guaranteed under the laws and Constitution of the
State of New York.

    9.   Venue is properly within this Court as the actions
and conduct, about which the Plaintiff complains, took
place within the geographic boundaries of this Court's
jurisdiction; the parties do business and/or reside and/or
have offices for doing business within the geographic
boundaries of this Court's jurisdiction; and the Plaintiff
resides within the geographic boundaries of this Court's
jurisdiction.

    10.   The Plaintiff has filed a timely Notice of Claim
within ninety days of the dismissal of the charge, the
concluding aspect of the transaction out of which the
litigation arises.

### III. THE PARTIES

    11.   The Plaintiff is an American citizen and resident
of the City of New York, the County of New York, and the
State of New York.

    12.   The Defendant City of New York is a municipal
entity which was created under the authority of the laws
and Constitution of the State of New York and which, under
the enabling law of the State of New York, has, among other
powers, the power to maintain a police department for the
purpose of protecting the welfare of those who reside in
the City of New York.

    13.   Defendants Undercover # 31107, "John Does",
Raymond Diaz, "Joe" Braille, Anthony Izzo, and Joseph
Esposito, and Brian Conroy are New York City Police and
uniform Command Officers and agents and employees of the
City of New York.  Although their actions and conduct
herein described were unlawful and wrongful and otherwise
violative of the Plaintiff's rights as guaranteed under the
laws and Constitution of the United States and as
guaranteed under the laws and Constitution of the State of

New York, they were taken in and during the course of his duties and functions as New York City Police and uniform Command Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as a New York City Police and uniform Command Officers and agents and employees of the City of New York.

14.  Defendant Raymond Kelly is the Police Commissioner of the City of New York. Along with Defendant Michael Bloomberg, the Mayor of the City of New York, and Defendant Shari C. Hyman, Director of the New York City Mayor's Office for Special Enforcement, he was and they were responsible for the promulgation and implementation of law enforcement policies and practices of the City of New York. In that regard and among other policies and practices which they and their subordinates promulgated and implemented, the latter with the express or constructive knowledge and consent of the former, are the policies and practices which are described and set forth hereinafter and which propelled the conduct taken against the Plaintiff about which the Plaintiff complains.  They are sued in their individual and official capacities.

IV.  ALLEGATIONS

15.  The Plaintiff is Robert Pinter.

16.  The Plaintiff resides in the lower eastside of New York City.  The Plaintiff has resided at his present residence address for approximately twenty seven [27] years.

17.  The Plaintiff resides by himself.

18.  The Plaintiff is fifty three [53] years of age.

19.  The Plaintiff's birth date is November 23, 1955.

20.  The Plaintiff was born and raised in Milwaukee, Wisconsin.

21.  The Plaintiff attended Southern Methodist University in Dallas, Texas and he graduated therefrom in 1980 with a BFA degree.

22.  The Plaintiff is gay.

23.   Plaintiff is a New York State licensed massage therapist.

24.   He has practiced in his profession as a massage therapist for approximately sixteen [16] years.

25.   Many of the individual to whom the Plaintiff provides his professional services as a duly New York State licensed massage therapist are individuals with HIV/AIDS. The Plaintiff's massage therapy is part of the prescribed regimen of treatment for the HIV/ADIS condition.

26.   The event which gives rise to this litigation occurred on October 10, 2008 and concluded on June 22, 2009.

27.   On October 10, 2008 the Plaintiff was unjustly and falsely arrested and maliciously and falsely charged with a criminal offense and otherwise subjected to an excessive and unreasonable custodial detention and all association therewith.

28.   The charge, which was preferred against the Plaintiff, was dismissed on June 22, 2009.

29.   On October 10, 2008, the Plaintiff was shopping for a DVD inside of the Blue Door Video Store at 87 1st Avenue, New York City, New York.

30.   The Blue Door Video Store is a short distance from the Plaintiff's residence.

31.   While in the Blue Door Video Store the Plaintiff was approached by a young Asian-American male.

32.   The young male approached the Plaintiff in what the Plaintiff would describe as a flirtatious manner and fashion and in what the Plaintiff would suggest was a charming manner. The young man suggested to the Plaintiff that they engage in a consensual sexual activity.

33.   Plaintiff subsequently learned that the individual, who approached him the Blue Door Video store, was an Asian American Undercover New York City Police Officer with the identity number of 31107.

34.   No mention of any money whatsoever was made at the time when the Undercover Police Officer suggested that he and the Plaintiff engaged in a consensual sexual activity.

35.   The only suggestion at the time was the suggestion that the Undercover Officer and the Plaintiff engage in a sexual activity.

36.   The Undercover Officer was the initiator of the suggested activity.

37.   As the Plaintiff was leaving the store, the Undercover Officer began to leave the store at which point the Undercover Officer offered to pay the Plaintiff fifty dollars for the previously mentioned consensual activity although the Undercover never showed the Plaintiff any money and the Plaintiff never, ever consented to receive any money or, for that matter, to even engage in the sexual activity which the Undercover had previously suggested.

38.   The Plaintiff, who had no intention whatsoever of accepting any money whatsoever for any sexual activity or for paying for any sexual activity or receiving any monies for sexual activity, never indicated, in words or actions, that he would accept any money, that he would pay any money, or, for that matter, that he would engage in the sexual activity which had been suggested by the Undercover Officer.

39.   As a matter of fact, when the money matter was raised by the Undercover Officer, the Plaintiff, who had never consented to anything as of that point, became very suspicious.

40.   As the Plaintiff left the Blue Door Video store, he walking away from the Video Store with the intention of going home alone.

41.   The Plaintiff was pushed into a fence on 6th Street between 1st Avenue and Avenue A by a number of men.

42.   The first thought that the Plaintiff had was that he was being robbed by a gang and that he had been set up to be robbed by the young man who had approached him in the Blue Door Video store.

43.   To his shock, the Plaintiff then learned that he was being arrested by the individuals who were New York City Police Officers and that the young man, who had propositioned the Plaintiff, was an Undercover Police Officer.

44.   The Plaintiff was handcuffed and taken to a New York City Police Department van vehicle and placed into the vehicle.

45.   Rather than being taken to the Precinct for processing, the Plaintiff was compelled, while rear cuffed with a seat belt constraining him in the van vehicle, to drive around with New York City Police Officers for approximately four hours while the Officers engaged in further police arrest activities.

46.   The Plaintiff was in serious pain as a consequence of the handcuffing and seat belt constraints four hour period of driving around.

47.   The handcuffs were tight, initially, and appeared to tighten even further causing the Plaintiff increased pain about which he complained on numerous occasions.

48.   The Plaintiff asked that the handcuffs be loosened.

49.   The Officers refused to loosen or otherwise adjust the handcuffs.

50.   The Officers continued to state that the Plaintiff would be transported to a Precinct "soon".

51.   The "soon" consumed approximately four [4] hours.

52.   The Plaintiff was eventually transported, along with others who had been arrested during the four hour period, to the 7th Precinct.

53.   At the 7th Precinct, the Plaintiff was fingerprinted and photographed and processed.

54.   The Plaintiff remained at the 7th Precinct for several hours until he was then transported to Manhattan Central Booking.

55.  The Plaintiff remained in Manhattan Central Booking until he was brought to a Courtroom pen prior to the Plaintiff's formal arraignment in Court on October 11, 2008 at or about 6:00 P.M. in AR3A. It is believed that at that time and location, there were eighty [80] cases scheduled for arraignment, sixty seven [67] of which were misdemeanors and thirteen [13] of which were violations.

56.  At the pen, the Plaintiff met with Eric Williams, Esq., a Legal Aid Society attorney, for a very brief period of time.

57.  It is believed that, along with two other Legal Aid attorneys, Eric Williams represented not only the Plaintiff but many of the other sixty eight individuals who were being formally arraigned at the Court session when and where the Plaintiff was being arraigned and who, like the Plaintiff, did not have private counsel.

58.  The Plaintiff, who suffers from high cholesterol and is prescribed with a daily dosage of 20mg of Lipitor that he takes each morning, had not taken his prescribed dosage of Lipitor since the morning of October 10, 2008.

59.  The Plaintiff, who had not slept in approximately thirty six hours and who did not have a clear understanding whatsoever of what was to transpire and what was happening to him other than he had been charged with a crime that he had not committed, informed his attorney that he was innocent of any wrong doing.

60.  In fact, the Plaintiff was innocent of any wrong doing and no reasonable police officer could, objectively and reasonably, have believed, based on what transpired as set forth above, that the Plaintiff had engaged in any unlawful conduct whatsoever.

61.  The Plaintiff recalls telling his attorney that he was innocent and that he had been "set up".

62.  None of the choices available to the Plaintiff with respect to what would transpire at the arraignment were fully explained to the Plaintiff in a manner and fashion which, under the circumstances, allowed him to make a clear choice, at that time, as to what he should do at the arraignment.

63.   The Plaintiff appeared in Court.

64.   The Plaintiff was intimidated, confused, unable to articulate anything, and was afraid, particularly about losing his New York State issued massage therapist license.

65.   Accordingly, the Plaintiff pled guilty, without adequate representation and adequate legal advice [due to the grossly over-loaded case load with which the Plaintiff's Legal Aid attorney was then confronted], to a violation of disorderly conduct even though he had not engaged in any unlawful activity including disorderly conduct and including prostitution with which he had been charged.

66.   The Plaintiff was directed to appear at a further sentencing proceeding on October 21, 2008 in the Midtown Community Court.

67.   The Plaintiff did appear and was sentenced to a conditional discharge, assessment of costs and a requirement that he attend five counseling sessions.

68.   The Plaintiff had no idea whatsoever that, at the sentencing proceeding, he could do anything whatsoever about the plea to the disorderly conduct charge and believed simply that he was there to receive a sentence.

69.   If the Plaintiff had known otherwise, he would have, then and with a clearer understanding, less intimidation, and less stress than he possessed at the time of his arraignment, withdrawn the plea.

70.   In fact, the Plaintiff did not even realize that the individual, who had called his name at the time of his appearance for sentencing, was an attorney and the Plaintiff believed her to be a clerk [although the Plaintiff subsequently learned that the individual was an attorney].

71.   The Plaintiff had no substantive discussion whatsoever with the attorney at the sentencing proceeding and was never informed that he could, at that time, withdraw his prior plea [at his arraignment] because of full understanding, at the time of his plea, about the options open to him including the option to plead not guilty since the Plaintiff was not guilty.

72.   The Plaintiff paid the Court assessment and attended the five mandated "counseling sessions".

73.   At the counseling sessions, the Plaintiff met several men who, like himself, were either gay or bi-sexual and who had been, under circumstances remarkably similar to the circumstances associated with the Plaintiff's arrest event, arrested.

74.   The Plaintiff began to collect data and began to educate the gay and lesbian and transgender community about the pattern of arrests comparable to the circumstances of the Plaintiff's arrest.

75.   The Plaintiff came to learn that Undercover Officer # 31107 and other Undercover New York City Police Officers had made dozens of arrests of older gay men and men who were at locations frequented by gay men.

76.   As a consequence of coalition of individuals, including a number of prominent political figures, came together to address these matters.

77.   It came to light and it is believed that the arrests, which had been made [including the Plaintiff's arrest] were actually designed not to make legitimate, probable cause based arrests but were made for the collateral purpose of endeavoring to shut down numerous video stores, which were believed to be regularly frequented by individuals whom it is believed were disproportionately members of the gay and lesbian and bi-sexual and transgender communities, for which there had been complaints received by the City of New York to shut down those otherwise legitimate business operations.

78.   As a consequence of the complaints, the City of New York undertook to sue the businesses as "nuisances" in order to shut them down.

79.   In order to make a case to do so and notwithstanding that it is believed that these businesses did not promote prostitution or otherwise engage in improper and offensive and unlawful enterprises, it is believed that the City of New York, through its Police Department and specifically the Organized Crime Bureau and the Vice Squad Division therein, constructed  a field

operation which authorized and propelled the kinds of
arrests which were made of the Plaintiff and many, many
others as a justification for their efforts to put these
otherwise legitimate businesses out of business.

80.  As a consequence of actions of the afore-described
coalition of individuals, it is believed that the Police
Commissioner and the Chief of the Department and the Mayor
of the City of New York, under whose authority the within
challenged policy was promulgated and the afore-described
field operations taken, re-visited the policy because of
the nature and extent of what is believed to be unlawful
arrests of individuals in order to make a case for closing
down businesses and not to prosecute the arrested
individuals for any conduct which was unlawful although the
conduct of the arrestees, as described, was asserted  to be
unlawful.

81.  Rather and as the City of New York and the
Defendant policy makes came to realize in re-assessing the
policy pursuant to which the Plaintiff was arrested,
Undercover New York City Police Officers were stretching
the facts and were otherwise endeavoring to entrap
individuals into engaging in unlawful conduct and to accuse
such individuals of doing so even when the individuals
never agreed to, or entered into, or committed, any
unlawful conduct.

82.  Eventually and in the context of the efforts of
the coalition of individuals, a meeting was held by
individuals in the coalition with, among others, New York
County District Attorney Robert Morganthau, himself, and
members of his Office at which the District Attorney
himself expressed concern about the situation which had
been brought to his attention and indicated that his office
would look into the matter including the many arrests which
had taken place over time in this regard and that he would
address the matter in an appropriate manner and fashion
once his office undertook its investigation into such.

83.  Subsequent to the meeting with District Attorney
Morganthau's, the Plaintiff, having obtained private
counsel, moved, on or about April 17, 2009, to vacate his
October 11, 2008 disorderly conduct plea [at arraignment],
the Plaintiff having already completed the terms and
conditions of his sentence attached to his plea including
the payment of the Court imposed assessment and including

his attendance at the five [5] mandated "counseling sessions".

84.   The New York County District Attorney's Office did "not oppose" the Plaintiff's Motion to Vacate his conviction and indicated that, if the Motion was granted, the District Attorney's Office would move to dismiss the accusatory instrument against the Plaintiff.

85.   In its papers, the New York County District Attorney's Office stated, among other things, that "the People have concluded that it is unlikely that the defendant went to the location of the occurrence with the intent to solicit money for sex, as supported by his age (52 upon arrest), lack of prior record for prostitution related offenses, and overall law-abiding history".

86.   In fact, the only prior arrest of the Plaintiff had occurred back in 1981, when the Plaintiff was approximately twenty five years old. He was, then, arrested in Milwaukee, Wisconsin and charged with "driving while impaired".

87.   The Plaintiff has been in alcohol related recovery for over eighteen years and regularly attends and is an active member of AA.

88.   In fact, the Plaintiff never solicited sex from the Undercover Officer and never, ever agreed, in words or otherwise, to have sex with the Undercover Officer.  In fact, the Plaintiff never agreed, either verbally or in any other manner ands fashion, to receive from or pay money to the Undercover Officer for sex.

89.   In fact, the Plaintiff was in the Blue Door Video store looking for a DVD.

90.   On June 22, 2009, the Criminal Court of the City of New York, State of New York, County of New York, granted the Plaintiff's Motion to vacate the Plaintiff's October 11, 2008 disorderly conduct plea conviction which was secured under duress and lack of an informed decision and judgment by the Plaintiff as a consequence of the circumstances as described herein.

91.   On or about that date and upon the Motion of the New York County District Attorney's Office to dismiss the

accusatory instrument and the charge encompassed therein,
the Criminal Court dismissed such and the Criminal
proceedings were ended with a merits favorable resolution
of the matter.

92.  In its papers related to the Plaintiff's Motion to
Vacate, the New York County District Attorney's Office
noted that the New York County District Attorney's Office
had recently dismissed three pending cases with
circumstances similar to those of the Plaintiff's arrest
because, as with the Plaintiff's arrest and prosecution,
"it would be difficult to prove the guilt of the defendants
in those cases beyond a reasonable doubt at trial", just as
it would have been to do so with respect to the Plaintiff's
case.

93.  It is believed that the Undercover Officer
involved in the Plaintiff's arrest, along with another
Asian American Undercover Officer who was involved in
similar arrests, were at the time of their activities, part
of the Patrol Borough Manhattan South Vice Crimes
Enforcement Squad as part of and/or related to the overall
New York City Police Department Organized Crime Bureau.

94.  It is believed that during 2008 at least thirty
men, all of whom are believed to be gay, bisexual or
transgender, were arrested, under the circumstances
comparable to those of the Plaintiff's arrest, and charged,
like the Plaintiff, with prostitution, for a collateral non
legitimate arrest justification but rather as a mechanism
to implement a New York City promulgated policy and
practice which targeted adult video stores that were
regularly frequented by members of the gay, lesbian, bi
sexual, transgender communities in order to put those
stores out of business notwithstanding that the stores were
engaged in legitimate businesses which were frequented by
law abiding members of the gay, lesbian, transgender, and
bi-sexual communities.

95.  It is believed that the several adult video stores
were so targeted by the New York City Mayor's Office of
Special Enforcement in conjunction with the New York City
Police Department [under the imprimatur and it is believed
with the actual or constructive knowledge of the Mayor of
the City of New York, the Police Commissioner of the City
of New York, and the Chief of the New York City Police
Department and other high level command officers including

the Command officer of the Organized Crime Bureau, the head
of Patrol Bureau Manhattan Vice Division, and the
Commanding Officer of Patrol Bureau Manhattan South].

96.  It is believed that one of the targeted adult
video stores was the Blue Door Video store.

97.  Many of those individuals, if not all, who were
arrested pled guilty to disorderly conduct if their
respective charges were not dismissed on the Motion of the
New York County District Attorney's Office this
notwithstanding that many if not all of those individuals
were not guilty of disorderly conduct or any crime but were
victims of the arrest collateral purpose of implementing
the New York City policy to put stores, associated with the
arrests of patrons of those stores, out of business
although it is believed that they operated legitimate
business, albeit businesses frequented by law abiding
members of the gay and lesbian and bi sexual and
transgender communities.

98.  It is believed, too, that in one of the
litigations involving the Blue Door Video Store, the
location at which the Plaintiff was arrested, the
Undercover Officers including, it is believed the
Undercover Officer involved in the Plaintiff's arrest,
admitted that the Officers approached the individuals
ultimately arrested, initiated the conversations, suggested
leaving the store with the individuals to have sex in an
apartment or a car outside of the store, and that they, not
the individuals,  mentioned money.

99.  It is believed that approximately eight of
approximately twelve individuals arrested during 2008 at
the Blue Door Video store, were over the age of forty two
[including the Plaintiff].

100.  The actions and conduct of the Officers involved
in the Plaintiff's arrest and in the arrests of multiple
others over a course of time were propelled by the New York
City quality of life offense initiatives including the
Mayor and Police Commissioner promoted initiatives to close
down adult video stores frequented by individuals who are
believed to be members of the gay, lesbian, bi-sexual and
transgender communities.

101.   Those initiatives propelled New York City Police
Officers to take actions which are unlawful including
making probable cause lacking arrests and otherwise
stretching the truth of what transpired during the course
of any efforts undertaken by the Police Officers to entrap
gay men into engaging in sexual activity and then to accuse
them of engaging in acts of prostitution [when nothing of
the sort has occurred] and otherwise discriminating against
individuals because of their sexual orientation or because
of their perceived sexual orientation and/or harassing
individuals because of their sexual orientation or their
perceived sexual orientation.

102.   It is believed that these policies and practices
emanated from the highest levels of the government of the
City of New York including it is believed the Mayor himself
and it is believed the Office of the Mayor of the City of
New York itself and including it is believed the Police
Commissioner of the City of New York himself and the Office
of the Police Commissioner of the New York City Police
Department itself and including it is believed the Chief of
Patrol Bureau Manhattan South himself and the Office of the
Chief of Patrol Bureau Manhattan South itself and including
the head of the Vice Squad in Patrol Bureau Manhattan South
and the Commanding Officer of the Organized Crime Bureau of
the New York City Police Department.

103.   The policies and practices and actions and conduct
related to the arrest of the Plaintiff and of others
comparably and similarly situated were designed to achieve
a collateral purpose and had nothing whatsoever to do with
any allegedly unlawful conduct by the Plaintiff [because
there was no unlawful conduct on the part of the Plaintiff
and no reasonable competent and prudently acting police
officer could have reasonably and objectively believed that
anything which the Plaintiff did was unlawful].

104.   The Plaintiff was falsely arrested; he was
subjected to malicious prosecution; he was subjected to
malicious abuse of criminal process; he was subjected to
discriminatory and harassing conduct and treatment because
of his status as a gay man and as a member of the gay,
lesbian, bi-sexual and transgender communities; he was
subjected to unreasonable and excessive terms and
conditions of his arrest and custodial imprisonment
including being required, while rear cuffed and seat belted
in, to drive around in a police van vehicle for

approximately four hours rather than transported immediately after his arrest to a Precinct for post arrest processing and, then, in lieu of being detained through the system being released with a Summons or Desk Appearance Ticket [without conceding that the arrest itself was in any manner or fashion lawful or constitutional]; and he was subjected, by his prolonged handcuffing under the circumstances as described, to excessive and unreasonable and unnecessary force. Furthermore, he was denied to his right to frequent and associate with a legitimate business establishment where he sought to secure otherwise lawful material.

105.   The actions and conduct and the policies and practices which were associated therewith and which propelled the same were unlawful and unconstitutional and violated the Plaintiff's rights –and the rights of others comparably and similarly situated, under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

106.   The actions and conduct and the policies and practices which were associated therewith and which propelled the same were unlawful under the laws and Constitution of the State of New York and/or the City of New York including false arrest, malicious prosecution, malicious abuse of criminal process, assault and battery, excessive force, excessive detention, and discrimination based on sexual orientation.

107.   The Plaintiff suffered humiliation, stress, anguish, psychological trauma, loss of earnings, physical pain and suffering and the violation of his constitutional and civil rights and rights otherwise guaranteed under law.

108.   The Plaintiff has not placed a monetary value on the damages which he suffered as a consequence of the actions and conduct and policies and practices associated therewith which propelled such.  However, he deems the monetary value to be substantial and to include not only compensatory damages but punitive damages, as well.

109.   The Plaintiff has no other ad equate remedy at law but for the institution of this litigation.

V.  CAUSES OF ACTION

A.  FIRST CAUSE OF ACTION

110.  The Plaintiff reiterates Paragraph #'s 1 through 109 and incorporates such by reference herein.

111.  The Plaintiff was unlawfully stopped and detained and entrapped and arrested in violation of his rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

112.  The Plaintiff suffered injuries and damages.

B.  SECOND CAUSE OF ACTION

113.  The Plaintiff reiterates Paragraph #'s 1 through 112 and incorporates such by reference herein.

114.  The Plaintiff was unlawfully stopped and detained and constructively arrested and arrested in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

115.  The Plaintiff suffered injuries and damages.

C.  THIRD CAUSE OF ACTION

116.  The Plaintiff reiterates Paragraph #'s 1 through 115 and incorporates such by reference herein.

117.  The Plaintiff was subjected to discriminatory treatment in violation of his rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

118.  The Plaintiff suffered injuries and damages.

D. FOURTH CAUSE OF ACTION

119.  The Plaintiff reiterates Paragraph #'s 1 through 118 and incorporates such by reference herein.

120.  The Plaintiff was subjected to discriminatory treatment in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

121.  The Plaintiff suffered injuries and damages.

### E.  FIFTH CAUSE OF ACTION

122.  The Plaintiff reiterates Paragraph #'s 1 through 121 and incorporates such by reference herein.

123.  The Plaintiff was subjected to malicious prosecution in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

124.  The Plaintiff suffered injuries and damages.

### F.  SIXTH CAUSE OF ACTION

125.  The Plaintiff reiterates Paragraph #'s 1 through 124 and incorporates such by reference herein.

126.  The Plaintiff was subjected to malicious prosecution in violation of the laws and Constitution of the State of New York.

127.  The Plaintiff suffered injuries and damages.

### G.  SEVENTH CAUSE OF ACTION

128.  The Plaintiff reiterates Paragraph #'s 1 through 127 and incorporates such by reference herein.

129.  The actions taken against the Plaintiff in targeting him, entrapping him, arresting him, taking him into custody and otherwise detaining him and prosecuting him were taken for collateral objectives other than the legitimate objectives associated with an arrest and prosecution.

130.  The Plaintiff was subjected to malicious abuse of criminal process in violation of his rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

131.   The Plaintiff suffered injuries and damages.

### H.   EIGHTH CAUSE OF ACTION

132.   The Plaintiff reiterates Paragraph #'s 1 through 131 and incorporates such by reference herein.

133.   The Plaintiff was subjected to malicious abuse of criminal prosecution in violation of the laws and Constitution of the State of New York.

134.   The Plaintiff suffered injuries and damages.

### I.   NINTH CAUSE OF ACTION

135.   The Plaintiff reiterates Paragraph #'s 1 through 134 and incorporates such by reference herein.

136.   The Plaintiff was subjected to excessive and unreasonable detention and to excessive and unnecessary and unreasonable physical force [related to his handcuffing] and to unnecessary and unreasonable and excessive terms and conditions of his seizure [including being required to travel around for several hours before being taken to a Precinct for post arrest processing] in violation of his rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

137.   The Plaintiff suffered injuries and damages.

### J.   TENTH CAUSE OF ACTION

138.   The Plaintiff reiterates Paragraph #'s 1 through 137 and incorporates such by reference herein.

139.   The Plaintiff was subjected to excessive and unreasonable detention and to excessive and unnecessary and unreasonable physical force [related to his handcuffing] and to unnecessary and unreasonable and excessive terms and conditions of his seizure [including being required to travel around for several hours before being taken to a Precinct for post arrest processing] in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

140.  The Plaintiff suffered injuries and damages.

### K.  ELEVENTH CAUSE OF ACTION

141.  The Plaintiff reiterates Paragraph #'s 1 through 140 and incorporates such by reference herein.

142.  The Plaintiff was punished for and denied his right "to associate" with the business entities where he desires to do business in violation of his rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

143.  The Plaintiff suffered injuries and damages.

### L.  TWELFTH CAUSE OF ACTION

144.  The Plaintiff reiterates Paragraph #'s 1 through 143 and incorporates such by reference herein.

145.  The Plaintiff was punished for and denied his right "to associate" with the business entities where he desires to do business in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

146.  The Plaintiff suffered injuries and damages.

### M.  THIRTEENTH CAUSE OF ACTION

147.  The Plaintiff reiterates Paragraph #'s 1 through 146 and incorporates such by reference herein.

148.  The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

149.  The Plaintiff suffered injuries and damages.

N.   FOURTEENTH CAUSE OF ACTION

150.  The Plaintiff reiterates Paragraph #'s 1 through 149 and incorporates such by reference herein.

151.  The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiff's rights under the laws and Constitution of the State of New York.

152.  The Plaintiff suffered injuries and damages.

O.   FIFTEENTH CAUSE OF ACTION

153.  The Plaintiff reiterates Paragraph #'s 1 through 152 and incorporates such by reference herein.

154.  Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of respondeat superior.

155.  The Plaintiff suffered injuries and damages.

P.   SIXTEENTH CAUSE OF ACTION

156.  The Plaintiff reiterates Paragraph #'s 1 through 155 and incorporates such by reference herein.

157.  If the City of New York elects to represents its Police Officers, the City of New York uniformly and as a matter of policy and practice indemnifies the Officers for any award of both punitive damages and compensatory damages and pays the settlements of any such litigations [for its Officers] and incurs the costs incurred in defending said litigations [without contributions from the Officers].

158.  In return, the Officers are required to cooperate with the City's attorneys and, in substance, to subordinate any interests to those of the City of New York in the context of the litigation.

159.  The named individual Defendants are employees and agents of the City of New York and their conduct, as

described, was taken in the course of their duties and functions as New York City Police Officers and Command Officers therein and, in their capacities as such, as an agent and employee of the City of New York.

160.   Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken pursuant to the otherwise lawful performance of their duties and functions as an agents and employees of the City of New York.

161.   The Plaintiff is entitled to recover against the City of New York for the conduct of its named and unnamed Officers under the federal claim jurisdiction pursuant to the doctrine of respondeat superior.

162.   The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

      [a] Invoke pendent party and pendent claim jurisdiction.

      [b] Award appropriate compensatory and punitive damages.

      [c] Award appropriate declaratory and injunctive relief.

      [d] Empanel a jury.

      [e] Award attorney's fees and costs.

      [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
       September 10, 2009

                Respectfully submitted,

                /s/James I. Meyerson____
                JAMES I. MEYERSON
                64 Fulton Street @ Suite # 502
                New York, New York 10038
                [212] 226-3310
                [212] 513-1006/FAX
                jimeyerson@yahoo.com

                ATTORNEY FOR PLAINTIFF
                BY:_____